PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036
(212) 969-3950

MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 100016
(212) 448-1100

*Attorneys for Defendants McDougal Littell, a Division of Houghton Mifflin Company, and R.R. Donnelley & Sons Company*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HILDA SEMERDJIAN,<br><br>   *Plaintiff,*<br><br>- v -<br><br>MCDOUGAL LITTELL, A DIVISION OF HOUGHTON MIFFLIN COMPANY, AND R.R. DONNELLEY & SONS COMPANY,<br><br>   *Defendants.* | 07-CV-7496 (LMM) |

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

September 28, 2007

## PRELIMINARY STATEMENT

Counts I-III and V of plaintiff's Complaint are claims for copyright infringement seeking copyright damages. These Counts are adequately pled and not the subject of this motion to dismiss. In an attempt to obtain remedies far beyond those that Congress made available under the copyright law, however, plaintiff also asserts a state law count (Count IV), which repackages her copyright infringement claim in the garb of state law fraud. This purported count fails to state a claim on which relief may be granted and is preempted as equivalent to the copyright claims, and should be dismissed with prejudice. With this preempted and deficiently pleaded state law claim seeking punitive damages out of the way, the balance of this case can be quickly resolved.

## STATEMENT OF FACTS

As this is a motion to dismiss under Rule 12(b)(6), the pertinent facts are the allegations of the Complaint ("Compl."), which for present purposes are assumed to be true.

According to the Complaint, plaintiff is the statutory heir to her father, Simon Samsonian, a highly regarded professional painter, now deceased. Compl. ¶ 2.

In 1998, defendant McDougal Littell ("McDougal"), a textbook publisher, requested permission to copy and print 40,000 copies of three artworks by Samsonian. *Id*. ¶ 10 & Complaint Exh. D (a letter from McDougal requesting that permission). "Samsonian granted McDougal the requested use *and charged a reproduction fee based on 40,000 copies*." *Id*. ¶ 10 (emphasis added).

McDougal allegedly knew, at the time it made the request, that it would print and distribute more than 40,000 copies. *Id*. ¶ 12. According to plaintiff, McDougal intended "to obtain access to the paintings at a lower cost than it would have paid had it been honest in its dealings with Samsonian." *Id*. ¶ 13.

Based on these factual allegations, plaintiff has asserted claims for copyright infringement against defendants (McDougal and its printer, R.R. Donnelly & Sons Company), which are not at issue on this motion (Counts I-III and V), and a fraud claim against McDougal (Count IV), which is.[1]

## ARGUMENT

## PLAINTIFF'S FRAUD CLAIM SHOULD BE DISMISSED

### A. The Purported Fraud Claim Is Preempted by the Copyright Act

The Copyright Act exclusively governs a claim when: (1) the particular work(s) to which the claim is being applied fall within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103 (here, Samsonian's paintings), and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106 (here, the rights to reproduce and distribute copies of plaintiff's copyrighted works). *See Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).[2]

---

[1] This is just one of many similar pending actions filed by plaintiff's counsel. The other pending actions are: *Beidleman v. McDougal Littell*, No. 06 C 1701 (N.D. Ill. filed Mar. 23, 2006, now in arbitration in New York City as American Arbitration Association ("AAA") case # 13-114-02408-06); *DeVore v. McDougal Littell*, No. 06 C 3484 (N.D. Ill. filed June 27, 2006, now being arbitrated in Chicago as AAA case #51 133 E 01440 06); *Bergt v. McDougal Littell,* No. 06 C 4645 (N.D. Ill. filed Aug. 28, 2006); *Bean v. McDougal Littell,* No. 3:07-cv-08063-DKD (D. Ariz. filed July 23, 2007); *Semerdjian v. McDougal Littell,* 1:07-cv-07496-UA (S.D.N.Y. filed Aug. 24, 2007); *Shuptrine v. McDougal Littell,* No. 1:07-cv-00181 (E.D. Tenn. filed July 26, 2007); *Wood v. McDougal Littell*, No. 07-cv-01516-DME-BNB (D. Colo. filed July 18, 2007); and *Sacha v. McDougal Littell, No.* 07-CV-194 (N.D. Ill. filed Jan. 10, 2007).

[2] The relevant statutory section is 17 U.S.C. § 301, entitled "Preemption with respect to other laws," which provides:
(a) On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [17 U.S.C. § 106] in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 [17 U.S.C. §§ 102 and 103], whether created before or after that date and whether published

Here, plaintiff's purported fraud claim amounts to nothing more than a claim of intentional copyright infringement – an assertion that defendants intentionally reproduced and distributed some copies of plaintiff's copyright works for which it had not sought or obtained a license. Under *Briarpatch*, and additional authority discussed herein, such a claim is equivalent to a copyright claim and preempted by the Copyright Act.

Plaintiff rests her fraud claim on precisely the same purported harm – unlicensed copying – as alleged in her copyright infringement claim. Plaintiff alleges that McDougal copied in excess of its license, and should have purchased a license for a larger quantity of copies. That is essentially a copyright claim, which Semerdjian relabels as a fraud claim in the obvious hope of evading the Copyright Act's prohibition against punitive damages. *See, e.g.*, *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 545 (4th Cir. 2007) (damages of a "punitive character [have] not been countenanced in the Copyright Act's remedies"); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 931 (7th Cir. 2003) (Posner, J.) (same); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 172 (2d Cir. 2001) (same).

Reframing copyright claims as state law fraud claims to evade the remedial framework of the Copyright Act has been repeatedly prohibited. Directly on point is *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F. Supp. 2d 592 (D. Md. 2002), where plaintiff asserted both copyright infringement claims and, in order to obtain punitive damages, a fraud claim based, as here, on allegations of "under-licensing." Plaintiff there alleged that defendant "held an individual subscription to a copyrighted publication put out by the plaintiff," and that, for many years, defendant "made and distributed, both internally and externally, copies of the publication in

---

or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

- 3 -

question, without paying for more than one individual subscription." *Id*. at 593. On those facts plaintiff pleaded copyright infringement and a fraud claim precisely analogous to that alleged here – "a simple fraud within the heartland of ordinary fraud cases, *i.e.*, no more than a scheme to cheat [plaintiff] on subscription fees." *Id*. at 594. The court dismissed the fraud claim because "[p]laintiff's fraud claim . . . is no more than a statement that it had been cheated out of money it would have made had it been paid for the activities of copying and distribution of copies. That is qualitatively no different than a copyright claim, and it is therefore preempted." *Id.* at 595. Here too, plaintiff's fraud claim is "no more than a statement that it had been cheated out of money it would have made had it been paid for the activities of copying and distribution of copies. That is qualitatively no different than a copyright claim, and it is therefore preempted."

Also on point is *Bucklew*, 329 F.3d at 923, where the Seventh Circuit upheld the dismissal of a similarly pleaded fraud claim and a prayer for punitive damages because, among other defects, the claim was a transparent dodge to obtain punitive damages that copyright law does not afford. Plaintiff had sued defendant for infringement and asserted state law claims for fraud and conversion, arising out of a software application created by defendant allegedly infringing a similar application created by plaintiff. *Id.* at 925-26. The Seventh Circuit held that because plaintiff's fraud and conversion claims sought the same compensatory damages as the infringement claim, those claims were "identical" to his infringement claim, and therefore preempted:

> [Plaintiff] seeks punitive damages for fraud and conversion under Wisconsin law. He argues that [defendant] obtained a computer disk containing his copyrighted program by falsely representing that it wanted merely to evaluate the program with a view toward possibly licensing it from [plaintiff], and having thus obtained the program by false pretenses then copied it, with the consequences described earlier. We may assume that this is a good claim under Wisconsin law. But [plaintiff] is not asking to have the disk returned, or for damages equal to the value of the disk plus punitive damages proportioned to that value. The

>compensatory damages that he seeks for the fraud and conversion are *identical* to the damages that it [*sic*] seeks for copyright infringement, so that its request for punitive damages is in fact a request for punitive damages for copyright infringement. *The copyright statute does not authorize such damages, as we have noted, and the statute's preemption clause forbids states to add sanctions for a wrongful act that is identical to a violation of the statute.*

*Id*. at 933-34 (emphasis added).

Also illustrative is *Johnson v. Arista Holding, Inc.*, 2006 WL 3511894 (Dec. 5, 2006 S.D.N.Y.) (Sand, J.), in which plaintiff asserted a copyright infringement claim, based on an allegedly copyrightable contribution to a musical composition, seeking "producer credit, fees, and royalties stemming from the exploitation of [his] contribution to the … composition." *Id*. at *7 n.10. Plaintiff *also* alleged that his contribution was fraudulently induced by an "expect[ation] to receive producer credit and royalties for his contribution to [the composition] and its exploitation." *Id* at *7. Judge Sand held plaintiff's fraudulent inducement claim preempted by the Copyright Act. *Id*. at *7. Citing *Bucklew*, the court noted that "[c]ommon law causes of action are generally preempted when they seek damages that are identical to those sought for copyright infringement." *Id*. Applying this principle to plaintiff's fraudulent inducement claim, Judge Sand concluded that plaintiff was simply "seek[ing] to vindicate the same rights as plaintiff's copyright claims," and that dismissal was mandated because the claim was "merely duplicative of the rights he asserts under the Copyright Act." *Id*.

Here, as in *Lowry's Reports*, *Bucklew*, and *Johnson*, plaintiff's copyright and fraud claims rest solely on the allegations of her copyright infringement claims – allegations that she was damaged when McDougal copied Samsonian's works beyond the quantitative limitation in the license agreement. The core allegations of the fraud claim, like those of the copyright claim, are that McDougal acquired a license for only 40,000 copies, paid the right price for that limited license, and then copied and distributed beyond that license – that is, that it should have taken

out a broader license (for which it would have been charged more).  Compl. ¶¶ 10-13, 18-19.  In short, the fraud claim is nothing other than a claim of intentional, knowing infringement, which damaged plaintiff to the extent of the what the license fee would have been for the unlicensed copies.

Because the fraud claim asserted here aims at unconsented copying and seeks damage measured by lost license fees plus punitive damages, it is preempted.  *See*, in addition to *Lowry's Reports*, *Bucklew*, and *Johnson*, *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 233 (4th Cir. 1993) (holding claim under Virginia Computer Crimes Act preempted "to the extent that it was based on [defendant's unauthorized] copying" of plaintiff's copyrighted work), and *Hayes v. Rule*, 2005 WL 2136946, at *11 (M.D.N.C. Aug. 19, 2005) (no actionable fraud claim where "[t]he alleged misrepresentation of material fact appears to be that Defendants told Plaintiff they wanted his CD so they could consider him for a record deal, when in fact they wanted his CD so that they could infringe Plaintiff's copyright").  Plaintiff's state law claims are preempted because they stand or fall on allegations of unlicensed copying, essentially complain of unlicensed copying, and assert damage, if any, amounting to the reasonable fee that should have been obtained for the (allegedly) unlicensed copies (*i.e.*, is identical to the damages sought for copyright infringement), and nothing else.[3]

---

[3]  The state law claim preempted in *Rosiszewski*, 1 F.3d at 225, was essentially a fraud claim under the Virginia Computer Crimes Act, providing a civil action against a defendant who "without authority" acts "with the intent to . . . obtain property or services by false pretenses; . . . embezzle or commit larceny; or . . . convert the property of another." *Id.* at 230.  Consistent with controlling law, the Fourth Circuit focused not mechanically on the formal inclusion of an extra element of fraudulent intent, but by looking at the pleading and concluding that on the pleaded facts that the gravamen or core of both the Computer Crimes Act claim and the copyright claim was unauthorized copying.  *See id.* (internal citations and quotations omitted; emphasis in original) ("extra element" of "state-created cause of action" must "change[] the nature of the action so that it is *qualitatively* different from a copyright infringement claim"); do not concern the subject matter of copyright and contain qualitatively different elements than those contained

Here, as in *Lowry's Reports*, *Bucklew*, and *Johnson*, plaintiff's fraud claim mimics the copyright claim: it depends squarely on allegedly unconsented copying (*i.e.*, copying in excess of a license); the harm is copying without license; the damages sought are measured precisely by the allegedly insufficient licensing fees; and plaintiff added the fraud claim so as to seek punitive damages for unlicensed copying that copyright law denies. Accordingly, plaintiff's fraud claim is preempted. *See, e.g.*, *Bucklew*, 329 F.3d at 934 ("[The Copyright Act's] preemption clause forbids states to add sanctions for a wrongful act that is identical to a violation of the statute."); *Giddings v. Vision House Production, Inc.*, 2007 WL 2274800, at *3 (D. Ariz. Aug. 7, 2007) ("in order to survive preemption, the misrepresentation must be based on a core of allegations dissimilar from those on which the copyright infringement claim is based"); *Johnson.*, 2006 WL 3511894, at *7 (a fraud claim "merely duplicative of the rights [plaintiff] asserts under the Copyright Act . . . must be dismissed"); *Lowry's Reports*, 186 F. Supp. 2d at 195 (fraud claim stating plaintiff "had been cheated out of money it would have made had it been paid for the activities of copying and distribution of copies . . . is qualitatively no different than a copyright

---

in a copyright infringement suit; *see also Law v. Sony Music Entertainment, Inc.*, 448 F.3d 1134, 1147 (9th Cir. 2006) (same). In evaluating whether an extra element is "qualitatively different," a court "look[s] at what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Briarpatch*, 373 F.3d at 306; *Bucklew, supra* (same). As explained in *Briarpatch*, this inquiry entails "a *restrictive view* of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Id*. (emphasis added). "Awareness or intent, for instance, are *not* extra elements that make a state law claim qualitatively different." *Id*. (emphasis added). *See also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1190 (C.D. Cal. 2001), *aff'd*, 90 Fed. Appx. 496 (9th Cir. 2003) (emphasis in original) ("[A] court should not rely merely on a 'laundry list' of the alleged 'elements' of the state law claims at issue, such that the mere *possibility* of an 'extra element' protects a claim from preemption. Instead, the court should engage in a fact-specific inquiry into the *actual* allegations underlying the claims at issue in the case, so as to determine whether the 'gravamen' of the state law claim asserted is the same as the rights protected by the Copyright Act."). If the mere formality of an "extra" element were sufficient, courts would not have held preempted the fraud claims in *Lowry's Reports*, *Bucklew*, *Johnson*, *Rosicewski*, and *Hayes*.

claim, and it is therefore preempted"); *Idema*, 162 F. Supp. 2d at 1191-92 (fraud claim preempted where "[t]hough nominally including an 'extra element' of falsity, the only 'misrepresentation' alleged is as to the authorship of what was, for purposes of the copyright claims, the allegedly infringing work").

### B. The Fraud Claim Must Be Dismissed for Failure to Plead Pecuniary Harm, an Indispensable Element of Fraud

Not only is the purported claim for fraud preempted; it also fails to state a good claim for fraud under New York law. Plaintiff's purported fraud claim should also be dismissed because she has not pled, and given the facts pleaded cannot plead, pecuniary harm resulting from her reliance on a fraudulent misstatement, a requisite element of fraud.

Under New York law, fraud generally requires that plaintiff suffered pecuniary loss as a result of relying on the allegedly fraudulent statement (or omission) – *i.e.*, that defendant *defrauded plaintiff of something of pecuniary value that she would otherwise have had absent the fraudulent statement or omission. See Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 599 (E.D.N.Y. 2000) ("damages are an essential element of a fraud claim under New York law"); *Nakano v. Jamie Saddock, Inc.*, 1999 WL 1225259, at *5 (S.D.N.Y. Dec. 20, 1999) (no fraud claim under New York law where "[p]laintiff has failed sufficiently to allege that Defendants' actions caused her quantifiable damages"); *Mom's Bagels of N.Y., Inc. v. Sig Greenebaum, Inc.*, 164 A.D.2d 820, 823, 559 N.Y.S.2d 883, 886 (1st Dep't 1990) (holding that "plaintiff has not set forth a cause of action for fraud, since plaintiff has failed to allege the essential element of injury or damage"); *Universal Builders Supply, Inc. v. Bayly, Martin & Fay, Inc.*, 150 A.D.2d 365, 366, 540 N.Y.S.2d 539, 541 (2d Dep't 1989) ("damage itself is an essential element necessary to support an action for damages for fraud").

Moreover, and dispositive here, "[a]ctual pecuniary losses [for fraud under New York law] *must be the direct, immediate, and proximate result of the misrepresentation. The damages must also be independent of other causes.*" *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) (emphasis added). Plaintiff's pecuniary injuries were, if any, the result of the infringement complained of and nothing more – the copies allegedly made without license – not the product of detrimental reliance on any alleged fraud. Had McDougal made multitudinous misrepresentations and fraudulent omissions but nevertheless paid a license fee for every copy, plaintiff would not have been damaged. Had McDougal been an intentional infringer and sought no license, making no alleged misrepresentation, plaintiff would the same injury, and a claim for infringement of the entire number of copies (intent not being an element of infringement or relevant to actual damages), with damages measured by the fee that a reasonable licensee should have been paid. Plaintiff is not worse off than if McDougal had infringed without seeking the license which it requested and plaintiff sold to it (and indeed better off, to the tune of the license fee charged for 40,000 copies and paid). *See* Compl. ¶ 10. Assuming that the allegations are true, plaintiff has infringement damages measured by the reasonable license fee for the unlicensed copies, but no other or additional pecuniary damage arising from any reliance on a fraudulent misrepresentation, which damages would in any case be wholly duplicative. *Cf.* Compl. ¶ 13. *See Kregos*, 3 F.3d at 665 ("New York law awards only 'out-of-pocket' expenses in fraud cases, entitling plaintiffs to damages solely for their actual pecuniary losses"); *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421-22 (1996) (internal citations and quotations omitted) (noting that under New York's "out-of-pocket" rule, "loss is computed by ascertaining the difference between the value of a bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain. Damages are to be

calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained.").

There is no allegation that McDougal did not pay the license fee set by plaintiff for the limited license sought and received. Indeed, quite the contrary. *See* Compl ¶ 10 ("Samsonian granted McDougal the requested use and charged a reproduction fee based on 40,000 copies"). To be sure, on the facts pleaded, McDougal is exposed to an infringement claim for any unlicensed copies; but that is always true where infringement is alleged. Plaintiff alleges no additional, or other, pecuniary damage arising from the alleged intentional breach of license (which is what the fraud claim amounts to). On the allegations of the Complaint, McDougal's alleged copying is the sole proximate cause of any pecuniary damage suffered by plaintiff. Beyond the damage from unlicensed copies, however, plaintiff has lost no more (and indeed less) than if no license had been sought: instead of an infringement claim for all the copies allegedly made, she has long ago banked the license fee for that "limited" quantity licensed and has an infringement claim for the balance. There is no basis in law or equity for piling on a fraud clam and exposing McDougal to far more substantial damages (punitive damages) for having sought what is allegedly an insufficient license than if it had sought no license at all. *See, e.g.*, *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 358-59 (6th Cir. 2007) (internal quotations omitted) (proper measure of actual damages is "the amount [plaintiff] would have received but for [defendant's] unlawful copying" – *i.e.*, "the unpaid license fees for all the unauthorized copies it made"); *Jarvis v. K2, Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) ("in situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work"); *On Davis.*, 246 F.3d at 165 (damages for

copying work without permission and compensation amount to "what the owner was legally entitled to exact a fee for"). To hold otherwise – that McDougal should be exposed to greater liability because it chose to acquire and pay for permission to some of its use of plaintiff's work – turns the theory of damages underlying the Copyright Act on its head, treating those who (insufficiently) license more punitively that those who fail to license at all.

Since plaintiff has not alleged, and cannot allege, any pecuniary damage resulting from reliance on any fraudulent misstatements (indeed, none are alleged) or omissions (none are alleged, and in any event under New York law "the failure to disclose an intention to breach is not actionable as a fraudulent concealment"),[4] and any pecuniary damage sought is plainly the direct result of infringement and nothing more, plaintiff's fraud claim must be dismissed.

### C. The Fraud Claim Must Also Be Dismissed Because Failure to Comply with the Purported License Limitation Does Not State a Claim for Fraud

Plaintiff's fraud claim is also irremediably defective because under New York law an intention not to comply with license terms states no good cause of action for fraud.[5] New York law is clear that a breach of contract does not amount to fraud regardless of whether (1) the breaching party intended to breach the contract, (2) the breaching party did not disclose to the aggrieved party that it had breached or would breach the contract, or (3) the aggrieved party belatedly discovered the contract had been breached. In each such circumstance – and where as here the alleged fraudulent statement or omission concerns a matter integral to the contract and not extraneous to it – no fraud action lies. *Compare TVT Records*, 412 F.3d at 91 ("allegations about defendants' states of minds used to support the contention that they intended to breach the

---

[4] *See TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 90 (2d Cir. 2005).

[5] *See, e.g.*, Compl. ¶ 12 ("McDougal knew its actual use would greatly exceed [the number of copies permissioned by Plaintiff]").

- 11 -

contract (i.e. the motives for the breach) . . . do not constitute actionable fraudulent misrepresentations collateral or extraneous to the contract") and *R.H. Damon & Co., Inc. v. Softkey Software Products, Inc.*, 811 F. Supp. 986, 992 (S.D.N.Y. 1993) ("To determine whether the fraud claims allege facts extraneous and collateral to the contract, courts should look to the source of the damages alleged. . . . [W]here a fraud claim seeks to enforce no more then the breached promises and obligations of a contract, rather than additional damages incurred . . . the claims are merely redundant and must be dismissed.") *with MCI Worldcom Comms., Inc. v. North American Comms. Control, Inc.*, 2003 WL 21279446, at *8-9 (S.D.N.Y. June 4, 2003) ("[w]here courts have found viable fraud claims based on fraudulent misrepresentation, the statements concerned matters separate and distinct from the subject matter of the contract").

Here, plaintiff mistakenly conflates the copyright ramifications of the parties' purported obligations under the license agreements with an untenable theory of fraud. "[U]nder New York law, the failure to disclose an intention to breach is not actionable as a fraudulent concealment." *TVT Records*, 412 F.3d at 90. *See also Contemporary Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 85 (2d Cir. 1982) (holding that "[i]f the only interest involved . . . is holding a party to a promise, a plaintiff will not be permitted to transform the contract claim into one for tort"); *Rotter v. Institutional Brokerage Corp.*, 1994 WL 389083, at *3 (S.D.N.Y. July 22, 1994) ("New York law is well established that a fraud claim cannot be based on solely the failure to perform a contractual promise"); *Caniglia v. Chicago Tribune-N.Y. News Syndicate, Inc.,* 204 A.D.2d 233, 234, 612 N.Y.S.2d 146, 147 (1st Dep't 1994) ("[A] cause of action for fraud does not arise, where . . . the only fraud alleged merely relates to a contracting party's alleged intent to breach a contractual obligation.").

Because the fraud claim plaintiff pleaded is not adequate under New York law, it must be dismissed as a matter of law.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully requests that the Court dismiss with prejudice Count IV of the Complaint in the above-captioned action, alleging fraud, pursuant to Federal Rule of Civil Procedure 12(b)(6), because Count IV (a) is preempted under 17 U.S.C. § 301(a) and (b) fails to state a claim on which relief can be granted under New York law.

Dated: New York, New York
September 28, 2007

Respectfully submitted,

PROSKAUER ROSE LLP

By: /s/ Charles S. Sims
Charles S. Sims (CS-0624)
Andrew Gerber (AG-0779)
Jason Husgen (JH-2201)
1585 Broadway
New York, New York  10036
(212) 969-3000

MCLAUGHLIN & STERN, LLP
David Blasband (DB-7069)
260 Madison Avenue
New York, New York 100016
(212) 448-1100

*Attorneys for Defendants McDougal Littell, a Division of Houghton Mifflin Company, and R.R. Donnelley & Sons, Company*