PROSKAUER ROSE LLP
1585 Broadway
New York, New York 10036
(212) 969-3950

MCLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 100016
(212) 448-1100

*Attorneys for Defendants McDougal Littell, a Division of Houghton Mifflin Company, and R.R. Donnelley & Sons Company*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HILDA SEMERDJIAN,<br><br>          *Plaintiff,*<br><br>          - v -<br><br>MCDOUGAL LITTELL, A DIVISION OF HOUGHTON MIFFLIN COMPANY, AND R.R. DONNELLEY & SONS COMPANY,<br><br>          *Defendants.* | 07-CV-7496 (LMM) |

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS**

October 22, 2007

**PRELIMINARY STATEMENT**

Plaintiff's opposition to the motion to dismiss the fraud claim entirely ignores the two central facts that preclude her claim:

- the only fraud damage plaintiff has alleged or identified is precisely the copyright infringement damage she seeks: the lost license fee for allegedly infringing copies as calculated by *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001); and

- plaintiff was paid what she asked for the 40,000 license she conveyed, and was not defrauded of any property whatever. Moreover, McDougal Littell ("McDougal") already had access to the Samsonian images when it requested permission (*see* the request letters attached as Exhibit D to the Complaint).

Accordingly, plaintiff has failed to show any basis for finding a fraud cognizable under New York law, or any basis for holding that the specific fraud claim he has pled is not preempted.

**ARGUMENT**

**I.    Plaintiff's Fraud Claim Is Preempted Because It Is Equivalent to Her Copyright Infringement Claim**

McDougal's motion to dismiss did not argue – as plaintiff has misleadingly implied – that fraud claims are categorically preempted. *Compare* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp.") at 11 & n.12 *with* Defendants' Memorandum of Law in Support of Their Motion to Dismiss ("MTD") at 2-8. To the contrary, Point A of McDougal's moving memorandum of law (and the authority on which it relied) discusses at length how the preemption of fraud claims depends on the particular allegations asserted, and relied on cases whose claims were analogous and held preempted. As was discussed, many fraud claims are not preempted, but the one asserted here is merely a disguised copyright claim rooted in unconsented copying, and seeking infringement damages.

Thus, the various decisions plaintiff cites - which do not deal with the type of fraud claims presented here - are simply irrelevant. (*See* Opp. 5-13.) Foremost among those is *Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291 (S.D.N.Y. 2007) (Koetl, J.), where the alleged fraudulent misstatement was purportedly intended to achieve access to unpublished copyrighted works otherwise unavailable to defendant. Plaintiff in *Integrative Nutrition* pled that "the defendants obtained *access* to Integrative Nutrition's intellectual property through fraud and misrepresentation." *Id*. at 294 (emphasis added). That is fundamentally different from the present case, where the Complaint establishes that McDougal had access to Semerdjian's published images from the outset, and so advised Samsonian when it sought a license to reproduce them. *See* Compl. Exh. D at 1 ("I have included a copy of the image for your reference") and 2 ("We have film from the previous publication, so there is no need to send a [*sic*] transparencies or photos."). As McDougal previously argued, there is no basis in law or equity for piling on a fraud clam and exposing McDougal to far more substantial damages (punitive damages) for having sought what allegedly eventually became an insufficient license than if it had failed to seek any license whatsoever.

By contrast, because it complains of overcopying and seeks lost licensing fees, plaintiff's fraud claim is preempted, as were the particular claims denominated as fraud in the cases she fails to distinguish, including *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923 (7th Cir. 2003) (Posner, J.), *Giddings v. Vision House Prod., Inc.*, 2007 WL 2274800 (D. Ariz. Aug. 3, 2007), *Johnson v. Arista Holding, Inc.*, 2006 WL 3511894 (S.D.N.Y. Dec. 5, 2006) (Sand, J.), *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F. Supp. 2d 592 (D. Md. 2002), and *Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129 (C.D. Cal. 2001), *aff'd*, 90 Fed. Appx. 496 (9th Cir. 2003). The attempt to distinguish *Lowry's Reports* on the spurious basis that there were no

"fraudulent or deceptive representations" there is particularly absurd, as nothing in that decision suggests that the elements of fraud were not alleged, and in any event the licensing correspondence here which plaintiff annexed as Exhibit D to her Complaint, and which she alleges in ¶ 11 contains the actionable misrepresentation, patently lacks any misrepresentation whatever. And *Giddings*, the most recent holding cited by either party, squarely holds a fraud claim with a misrepresentation formally pleaded nonetheless preempted, because to escape preemption, a fraud claim based on a "misrepresentation must be based on a core of allegations dissimilar from those on which the copyright infringement claim is based." The allegations in *Giddings* were "derived from Defendants' unauthorized reproduction and distribution of Plaintiff's artwork and, thus, are not, in actuality, different from the copyright claim. As such, the fraud claim is preempted by the copyright infringement cause of action." *Giddings*, 2007 WL 2274800, at *3.[1]

Plaintiff's effort to rescue the claim by suggesting that the fraud was complete when the permission was sought and granted (Opp. 13) is belied by the permission correspondence that plaintiff annexed to her Complaint, which shows that what counsel repeatedly mischaracterizes as a "misrepresentation" was simply a boilerplate request for "permission to use the following image for inside editorial use in this book, North American rights, for a print run of 40,000." *See* Compl. ¶¶ 10-11 and Exh. D at 1; *accord id*. at 2. That is no misrepresentation at all, any more than would be a customer's purchase of three pairs of blue jeans while intending to steal a fourth

---

[1] Among the inapposite cases cited by plaintiff is *Brignoli v. Balch Hardy & Scheinman, Inc.*, 645 F. Supp. 1201 (S.D.N.Y. 1986), which was decided prior to *Bucklew*, *Lowry's Reports*, *Johnson v. Arista Holding* (all cited *supra*), and indeed all the fraud preemption cases on which defendants rely. *Brignoli* is no authority at all, as the district court subsequently concluded that it lacked subject matter jurisdiction. 696 F. Supp. 37 (S.D.N.Y. 1988). Moreover, not only did that court lack the benefit of *Bucklew* and its progeny, but also the work at issue there was unpublished and allegedly obtained through fraud, unlike the published work at issue here.

pair the next day. There was neither misrepresentation nor damage at that point, and if plaintiff was ever harmed thereafter, it was by subsequent infringement – copying beyond the license's quantitative limitation.

A state law claim is preempted by the Copyright Act when the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106. *See Briarpatch Ltd., v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). In order for a state law claim to survive preemption, a plaintiff must establish "*qualitatively* different conduct on the part of the infringing party[.]" *Harper & Rowe Pubslisterns, Inc. v. Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 539 (1985) (emphasis added). "An action will not be saved from preemption by elements such as awareness or intent, which alter the action's scope but *not* its nature." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) (internal quotations omitted; emphasis added). In examining whether a state law claim is preempted "*it is the underlying reality, rather than the label, that is decisive*." 1 NIMMER ON COPYRIGHT ¶1.01[b][2][f][iv] (emphasis added). Properly assessed, then, a state law claim is preempted where, as in the instant action, "the state right is infringed by the mere act(s) of reproduction, performance, distribution or display." *Universal City Studios, Inc. v. T-Shirt Gallery, Ltd.*, 634 F. Supp. 1468, 1475 (S.D.N.Y. 1986) (internal quotations omitted). *See also Bucklew*, *supra*, and MTD n.3.

Plaintiff's opposition confirms that the "fraud" claim she asserts is equivalent to the rights protected by copyright, because the claim is rooted in infringement and the damages she seeks are copyright damages. She pleads at ¶ 10 (and thereby concedes) that McDougal sought and paid for a license for 40,000 copies; McDougal's payment for what it purchased leaves

plaintiff with potential damages of only the lost licensing fees for the subsequent copying for which she was allegedly not compensated. Even now, plaintiff identifies the damages she suffered as the "higher licensing fee" allegedly due for printing beyond the license, and nothing else. *See, e.g.*, Opp. n.8 ("Samsonian [would] have taken steps (by insisting on a higher licensing fee) had he known that McDougal intended to exceed the terms of the licenses.").

However denominated, a claim complaining of unlicensed copying and seeking lost licensing fees is clearly preempted, a point previously discussed by defendants (MTD 5) and effectively conceded by plaintiff in the just-quoted explanation. *See also* Semerdjian Opp. n.11 (quoting discussion of Judge Posner's opinion in *Bucklew*, *supra*, in 5 PATRY ON COPYRIGHT §18:21 n.7: "The key to Judge Posner's opinion is his statement that the damages plaintiff sought were identical to the damages that arose from the acts constituting copyright infringement; in essence, the same acts gave rise to the same damages and hence in that case the fraud claim was merely a relabeled copyright infringement claim.") That characterization fits plaintiff's fraud claim precisely: here, as in *Bucklew*, plaintiff's alleged damages are precisely the lost licensing fee awarded in such cases as *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 358-59 (6th Cir. 2007) (internal quotations omitted) (proper measure of actual damages is "the amount [plaintiff] would have received but for [defendant's] unlawful copying" – *i.e.*, "the unpaid license fees for all the unauthorized copies it made"), *Jarvis v. K2, Inc.*, 486 F.3d 526, 533 (9th Cir. 2007) (internal quotations omitted) ("in situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work"), and *On Davis*, 246 F.3d at 165 (same).

If plaintiff's fraud claim is not preempted, then in every case pleading copyright infringement based on copying in excess of a license, a fraud claim seeking punitive damages may be tacked on., totally upsetting Congress's careful delimitation of copyright damages to actual damages plus a recovery of profit. As the Seventh Circuit held in *Bucklew*, that is simply not the law enacted by Congress.

## II. Plaintiff Has No Fraud Claim

### A. Plaintiff Has Pleaded Copyright Damages, Not Fraud Damages Caused by Detrimental Reliance on a Misrepresentation

In response to defendants' showing that "Plaintiff's purported fraud claim should also be dismissed because she has not pled, and given the facts pleaded cannot plead, pecuniary harm resulting from her reliance on a fraudulent misstatement, a requisite element of fraud" (MTD 8), plaintiff has failed to show that the Complaint alleges any damages other than copyright damages flowing from the alleged infringement. Her assertion that "damages occurred *before any infringement took place* and would have occurred even had no infringement ever taken place" (Opp. 18) doesn't make it so, and the argument is wholly untenable. McDougal was under no obligation to license any particular amount at the outset; even on the theory that the license it obtained was eventually inadequate, there would have been no injury whatever had amounts in excess of 40,000 copies been licensed when printing was nearing 40,000 copies. The *only* purported "fraud damage" specified by plaintiff in *either* the Complaint *or* the Opposition is that "Samsonian [would] have taken steps (by insisting on a higher licensing fee) had he known that McDougal intended to exceed the terms of the licenses." Opp. n.8. As explained in Point I, *supra*, lost licensing fees (what plaintiff's Complaint and Opposition seek) are the copyright damages prescribed by *On Davis,* and bear no resemblance to the "out of pocket" damages recoverable under New York fraud law.

Plaintiff's lengthy discussion of Rule 9 (Opp. 14-16) is irrelevant. Defendants had not moved not for failure to plead fraud with particularity, but to dismiss plaintiff's purported fraud claim which identifies no fraud damages, whose alleged "misrepresentation" is simply a request for a license "for a print run of 40,000 copies" (Complaint Exhibit D), and which states no fraud claim on which relief can be granted. Plaintiff has not only failed to plead a proper claim for fraud with requisite particularity; but also failed to present any actionable fraud claim at all, as no fraud (out-of-pocket) damages have been alleged and the only damage plaintiff has in fact alleged is infringement damage. Under *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993), "[a]ctual pecuniary losses [for fraud under New York law] must be the direct, immediate, and proximate result of the misrepresentation . . . independent of other causes," but here there was no misrepresentation and in any event any pecuniary loss to plaintiff happened, if at all, only if and when the license was overrun, a direct consequence of (and not independent of) the alleged infringement. Users of copyrighted illustrations, like users of any inputs in the business world, are entitled to operate on a pay-as-you-go basis, and the acquisition of a license for a print run of 40,000 copies is neither fraudulent nor the cause of any immediate damage – which can occur, if at all, only if and when the licensee copies without (*i.e.*, in excess of) a license.

### B. Failure to Comply with the Purported License Limitation Does Not State a Claim for Fraud

Point II.B of plaintiff's Opposition misapprehends defendants' argument and fails to offer any effective response.

McDougal's moving memorandum demonstrated that plaintiff failed to state a claim for fraud by pleading that McDougal agreed to license limitations without intending to comply with them, because under New York law agreement to license terms while not intending to comply states no claim for fraud. MTD Point C. Citing state court decisions and federal decisions

applying New York law, McDougal demonstrated that plaintiff's "fraud" claim should be dismissed because "a cause of action for fraud does not arise, where . . . the only fraud alleged merely relates to a contracting party's alleged intent to breach a contractual obligation." *Caniglia v. Chicago Tribune-N.Y. News Syndicate, Inc.,* 204 A.D.2d 233, 234, 612 N.Y.S.2d 146, 147 (1st Dep't 1994).  *See* MTD 11-12.

Plaintiff's opposition distinguishes none of those cases cited by defendants, arguing that she need not do so because McDougal's argument is "nothing more than a continuation of their [argument] that Plaintiff's [fraud claim] lies in contract, not fraud." Opp. 20.  But McDougal did not and does not argue that the fraud claim "sounds in contract" – plainly Semerdjian neither intended to nor did state a good contract claim.  Rather, McDougal argued that Count IV states no good claim of fraud under New York law because its core allegation is that McDougal agreed to a contract without intending to comply with all its terms.  The argument that such a theory states no valid fraud claim under New York law remains unrebutted, and requires dismissal independently of all the other reasons advanced here.

**CONCLUSION**

For all the foregoing reasons, as well as those detailed in defendants' memorandum of law in support of their motion to dismiss, defendants respectfully request that the Court dismiss with prejudice Count IV of the Complaint in the above-captioned action, alleging fraud, under Fed. R. Civ. P. 12(b)(6), because Count IV fails to state a claim on which relief can be granted under New York law and in any event is preempted under 17 U.S.C. § 301(a).

New York, New York
October 22, 2007

                Respectfully submitted,

                PROSKAUER ROSE LLP

                By: /s/ Charles S. Sims
                Charles S. Sims (CS-0624)
                Andrew Gerber (AG-0779)
                Jason Husgen (JH-2201)
                1585 Broadway
                New York, New York  10036
                (212) 969-3000

                MCLAUGHLIN & STERN, LLP
                David Blasband (DB-7069)
                260 Madison Avenue
                New York, New York 100016
                (212) 448-1100

                *Attorneys for Defendants McDougal Littell, a Division of Houghton Mifflin Company, and R.R. Donnelley & Sons, Company*